FILED
2017 Sep-29 PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **TAMARA TOMPKINS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CV-** |
| | ) | |
| **CUTS BY US, INC.** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

# COMPLAINT

## I. INTRODUCTION

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq. (hereinafter "Title VII"), which provides for relief against discrimination in employment on the basis of race and sex discrimination, and prohibits retaliation, and pursuant to 42 U.S.C. §1981, which prohibits race discrimination and retaliation. Plaintiff seeks compensatory damages, punitive damages, costs, attorney's fees and requests a jury trial pursuant to 42 U.S.C. § 1981a.

## II. JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 2201 and 2202; and 42 U.S.C. § 2000e-5(f)(3).

3. The unlawful employment practices alleged herein were committed by defendant within Madison and Limestone County, in the State of Alabama. Venue is

proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

4. Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C. § 1981a and the Seventh Amendment of the Constitution of the United States.

## III. ADMINISTRATIVE EXHAUSTION

5. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. On or about August 21, 2013, Plaintiff mailed a letter sufficient to constitute a Charge of Discrimination to the EEOC complaining of discrimination based upon her race and sex ("Exhibit A," attached). Plaintiff also filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of discrimination based on her race. Charge No. 420-2013-03039 was filed on or about September 19, 2013 ("Exhibit B," attached).

6. On or about October 6, 2016, the EEOC determined that there was cause to believe that the Plaintiff had been discriminated against based on her race ("Exhibit C," attached).

7. On or about July 5, 2017, a Notice of Suit Rights from EEOC was issued, authorizing suit within 90 days of receipt ("Exhibit D," attached). Plaintiff received the Notice of Suit Rights on or about August 24, 2017. This lawsuit is timely filed.

## IV. PARTIES

8. Plaintiff Tamara Tompkins is a black female citizen and a resident of Lauderdale County, Alabama. Plaintiff was employed by the Defendant at multiple locations in Madison and Limestone County, Alabama.

9. Defendant is an employer in an industry affecting commerce and otherwise meets the definitional requirements of 42 U.S.C. § 2000e(a), (b), 42 U.S.C. § 12111(2), and 29 U.S.C. § 2611(4). At all times relevant to this action, Defendant employed the requisite number of employees and maintained operations in the Northern District of Alabama.

## V. STATEMENT OF FACTS

10. Plaintiff was hired by Defendant as a stylist on or about July 18, 2011. Plaintiff had previously worked as a stylist for Defendant, for approximately one year.

11. Plaintiff transferred among different salons in the first few months of her employment, before being assigned permanently to the Madison salon. The first transfer was in accordance with Plaintiff's request, to a location closer to her home. The second transfer was initiated by Defendant, after an incident in which Plaintiff successfully resolved a customer complaint about a child's haircut given by another stylist. The child had white-blonde hair, and the stylist, a white woman, became outraged after Plaintiff utilized the correct technique to properly cut the child's hair.

12. Plaintiff was transferred to the Madison salon, as a result of an unfounded complaint about the incident by the white stylist. Plaintiff's report of the incident was unfairly discounted by Jan Johnson, the District Manager and a white female, and upon information and belief, no attempt was made to contact the customer.

13. Plaintiff was the only black stylist at the salons to which she was assigned, during the time she was employed by Defendant.

14. Around May of 2012, while assigned to the Madison salon, Plaintiff began expressing an interest in obtaining a management position with Defendant to Johnson.

15. Plaintiff was qualified for a position as a salon manager, and, at all relevant times, met or exceeded the reasonable expectations of her employment.

16. Johnson's response was to remind Plaintiff that a manager was responsible to come in to work in the place of an absent stylist. Plaintiff replied that this was not a problem because she was already the first person called when a stylist was absent, and she had no problem performing this duty.

17. When the salon manager position opened in the Madison Salon, the Plaintiff expressed to Johnson her interest in being considered for that particular position. The assistant salon manager position also opened, but was never filled during the relevant time period to Plaintiff's knowledge.

18. Defendant's policy, as stated in the Employee Handbook, is to recruit from within the company for salon manager and assistant manager positions.

19. Each time Plaintiff inquired about the Madison Salon Manager position, Johnson made a negative comment about Plaintiff's ability to work and fulfill her childcare responsibilities for her small children. Each time Johnson commented about Plaintiff's childcare responsibilities, Plaintiff assured Johnson that she would be able to execute the responsibilities of a salon manager without childcare becoming a problem.

20 Eventually, Johnson conveyed to Plaintiff that she would not be hired for the Madison Salon Manager position, because they needed someone who could handle "Tina."

21. Johnson recruited a white male, Jim Thomasson, from outside the company, for the position of Madison Salon Manager.

22. Plaintiff was equally or better qualified than Thomasson for a position as a salon manager. Plaintiff had already been trained by the Madison Assistant Salon

Manager, Toni, on a salon manager's payroll and bookkeeping duties.

23. Thomasson started work as manager at the Madison salon, but quit shortly afterward. Plaintiff again expressed her interest in the Madison Salon Manager position. After a period of time, Thomasson was re-hired as the salon manager at the Madison location.

24. During Thomasson's tenure as Madison Salon Manager, Plaintiff was required to perform the manager's payroll and bookkeeping duties; which were duties that Thomasson could not or would not perform. Plaintiff did not receive a promotion or additional compensation for these duties. Other stylists were not required to perform these duties.

25. Johnson indirectly disclosed to Plaintiff that it was likely that a salon manager position would open in the Harvest location.

26. Plaintiff continued to express her interest in a salon manager position during the time Thomasson held the salon manager position in Madison, and during the time leading up to the salon manager vacancy at the Harvest location. Plaintiff expressed her interest multiple times both to Johnson, and to Jeff Kleinman, the owner, who is a white male. Kleinman advised Plaintiff to send him a resume, and Plaintiff did so.

27. Johnson continued to make negative references to Plaintiff's childcare responsibilities whenever Plaintiff expressed her interest in a management position. Plaintiff continued to assure Johnson that her childcare situation was not an impediment to performing the duties of a manager.

28. Johnson further responded to Plaintiff's expressions of interest in a salon manager's position by stating "We have to get Chrystal (the Harvest Salon Manager) out

of there first." The Madison Salon Assistant Manager, Toni XXXX , told the Plaintiff not to worry, that Plaintiff was going get the manager's job in Harvest once the position opened.

29. When the Harvest Salon Manager's position opened, Plaintiff was advised by another stylist employee, Kristin Williams, a white female, that she had been recruited by Kleinman for promotion to salon manager at the Harvest salon. Upon information and belief, when Williams was offered the promotion, on or around August, 2012, she asked Johnson and Kleinman, "What about Tamara?" Upon information and belief, Kleinman stated that he knew nothing about that, and Johnson stated that she would take care of that; don't worry about that.

30. Plaintiff was equally or better qualified than Williams for the position of salon manager in Harvest.

31. Johnson volunteered to Plaintiff that the reason Kleinman chose Williams for the promotion instead of the Plaintiff was because Williams did not have any children, and that she (Johnson) had nothing to do with it.

32. The Madison Salon Manager position re-opened when Thomasson quit a second time.

33. When Plaintiff expressed interest again, Johnson told Plaintiff that the reason she wasn't getting a manager's position was because she didn't get along with her co-workers and she had been transferred from shop to shop.

34. On or about October 8, 2012, Plaintiff wrote a letter to Defendant's home office advising that she was the only African American in her workplace and complaining that she was being unfairly treated and labeled a problem because of her race, specifically, that other employees had been questioned about her (without her knowledge or an

opportunity to for her to respond) and a judgment had been made that she did not work well with others, and further, that in several conversations about a management position, she had not been told of this. Plaintiff requested fair treatment and a truthful response about her standing in the company.

35. On or around October 12, 2012, Plaintiff wrote a letter to Kleinman, and Tammy XXXX, the Area Manager and a white female, expressing interest in the Madison Salon Manager position.

36. Plaintiff spoke to Kleinman on the telephone about the Madison Salon Manager's position, and he advised her that he was going to tell Johnson to advance Plaintiff as positions became available. Thereafter, Kleinman and Johnson held a private conversation.

37. The Madison Salon Manager position was filled by the promotion of a white female stylist, Amanda XXXX.

38. Plaintiff was equally or better qualified than Amanda XXXX for the salon manager position.

39. Plaintiff requested and received a transfer to the Harvest salon in order to better position herself to obtain the next vacant salon manager position. Johnson informed Plaintiff that she expected Plaintiff to assist with the manager's paperwork in Harvest. Plaintiff did not receive additional compensation or a promotion for these duties. Other stylists were not required to perform these duties.

40. The Harvest Salon Manager position opened again on or around July, 2013. Upon information and belief, Williams recommended Plaintiff as her successor.

41. Kleinman telephoned Plaintiff and told her that he knew Plaintiff was interested in the vacant salon manager position in Harvest, and that "we would talk more about it when Jan came back" from vacation.

42. When Plaintiff followed up with Johnson about the manager's position in Harvest, Johnson stated that she had nothing to do with the hiring decision, that it was up to Kleinman.

43. During the approximately 2 months that the Harvest Salon Manager position was vacant, Plaintiff was required to perform the manager's bookkeeping duties and some the manager's product ordering duties, and she trained a new employee. Plaintiff was also given the key to the mailbox to distribute paychecks, which was a manager's duty. Plaintiff was not promoted, nor did she receive additional compensation for performing these management duties. Other stylists did not perform these duties.

44. When the salon manager position in Harvest was not immediately filled, Plaintiff continued to followup with Johnson and Kleinman about the vacancy.

45. Kleinman asked Plaintiff whether she had been told by Johnson that there were going to be interviews for the job. When Plaintiff replied that she had not been told, Kleinman initiated a 3-way conversation with Johnson, and verified that Johnson had not told Plaintiff that there would be interviews for the position. Thereafter, Johnson and Kleinman held a private conversation.

46. Kleinman later called Plaintiff and advised her that she would be interviewed for the position. Kleinman said there were three people interested and that Plaintiff was at the top of the list.

47. Upon information and belief, this was the first and only time during Plaintiff's employment that formal interviews were conducted for a salon manager's position. Johnson conducted the interviews.

48. During her interview, Johnson once again questioned Plaintiff's ability to perform the manager's duties while caring for her children.

49. The position was awarded to Tammy Orillion, a white female, in or about August, 2013.

50. Plaintiff asked Johnson why she did not get the promotion and Johnson told Plaintiff that the reason was because of the people that said that Plaintiff transferred from shop to shop because of "the B.S."

51. Plaintiff was equally or better qualified than Orillion for the Harvest Salon Manager position. Upon information and belief, Orillion was a new employee with Defendant.

52. Plaintiff was required to correct Orillion's errors in the bookkeeping, and do the payroll paperwork for her because Orillion did not know how to perform these management duties. Plaintiff did not receive a promotion or additional compensation for performing these duties. Other stylists did not perform these duties. Johnson prepared the weekly schedule for Orillion, which was also a salon manager's duty.

53. On or around September 23, 2013, Orillion told Plaintiff that Johnson told her to schedule Plaintiff to work on Sundays, which was a less desirable weekend work day, a less desirable day for the Plaintiff to work, of which Johnson was aware, and a day that Plaintiff had not previously been required to regularly work. Until then, it had never been a problem for Plaintiff to be off on most Sundays. Other employees who had not

complained or filed EEOC charges were allowed to continue to have their regular weekend day off, absent an unusual circumstance.

54. On or around November 12, 2013, Plaintiff's key holder status was removed. Key holder status is a desirable position of trust with Defendant. Key holders can open and close the shop, and can prepare the close out report. Plaintiff was a key holder in Madison and in Harvest. Orillion told Plaintiff that Johnson did not want Plaintiff to have a key because she had filed a case against Defendant.

55. Plaintiff's key holder status was permanently removed without cause. Key holders who had not complained or filed EEOC charges retained their keys and positions of trust in the company.

56. Upon learning via a Craigslist advertisement that the Harvest Salon Manager position was again likely to become vacant, Plaintiff again expressed interest to Johnson in the position.

57. The Harvest Salon Manager position became vacant again on or about December 10, 2013, when Orillion was demoted. Jamie Quick, a white female, was immediately promoted to the position. Upon information and belief, no interviews were held and Plaintiff was not considered for the promotion.

58. Plaintiff was equally or better qualified than Quick for the salon manager position.

59. Plaintiff was required to train Johnson on the closing procedure at Harvest, so that Johnson could train Quick. Plaintiff was expected by Johnson to correct mistakes in the paperwork, and find discrepancies, which were management responsibilities. Plaintiff was not promoted nor did she receive additional compensation for these duties.

Other stylists were not expected to perform these duties.

60. Plaintiff was required to take a leave of absence on or around May, 2014, for health reasons, and she resigned shortly thereafter without returning to work for Defendant.

61. Upon information and belief, at all relevant times, Defendant had never hired or promoted a black salon manager.

62. Upon information and belief, all salon manager positions that opened during the relevant time were filled with white males and/or white females without care-giving responsibility for small children.

63. At all relevant times, Johnson was acting in the line and scope of her employment and as an agent of Defendant, and held supervisory authority over Plaintiff. At all relevant times, Kleinman, the owner, was an agent of the Defendant and held supervisory authority over Johnson and Plaintiff.

64. The reasons given for failing to promote Plaintiff to the position of salon manager were facially illegal or a pretext for illegal discrimination based on Plaintiff's race and/or sex, and/or were a pretext for illegal retaliation.

65. Plaintiff was not promoted due to illegal discrimination based on her sex and/or her race, and/or due to illegal retaliation.

66. Plaintiff was subjected to illegal discriminatory stereotyping, and perceived as unreliable due to being a mother of small children, and/or a black mother of small children, despite her assurances of her ability to be reliable and her demonstrated ability to be reliable. This illegal stereotyping was based on her sex and/or her race, and/or was illegal retaliation.

67. Illegal stereotyping was used as a pretext to justify promotion of equally or lesser qualified applicants over Plaintiff, and as a pretext to recruit and/or hire equally or lesser qualified applicants from outside the company, in violation of Defendant's policy.

68. Plaintiff was unfairly held to a different and higher standard than other salon management applicants, due to her race and/or her sex, and/or due to illegal retaliation.

69. Complaints and negative comments about Plaintiff were tolerated, solicited and more readily accepted as true by Defendant, due to her race and/or her sex, and/or due to illegal retaliation. These unfair complaints and negative comments were used to justify promoting equally or lesser qualified applicants over Plaintiff, and to recruit and/or hire equally or lesser qualified applicants from outside the company, in violation of Defendant's policy.

70. Equally or lesser qualified applicants than Plaintiff were actively recruited for promotion, promoted over Plaintiff, recruited and/or hired from outside the company, instead of Plaintiff, in violation of policy, due to discrimination based on her race and/or her sex, and/or due to illegal retaliation.

71. Plaintiff was required to perform management duties without promotion or additional pay, due to discrimination based on her race and or her sex and/or due to illegal retaliation.

72. Plaintiff's childcare arrangements were offensively questioned, without cause, each time she pursued promotion, despite her demonstrated ability to attend work reliably and her demonstrated availability for non-scheduled extra work, due to discrimination based on her race and or her sex, and/or due to illegal retaliation.

73. Plaintiff's key holder status was removed due to discrimination based on her

race and or her sex, and/or due to illegal retaliation.

74. Plaintiff was unnecessarily scheduled to work on Sundays, due to discrimination based on her race and or her sex, and/or due to illegal retaliation.

75. Plaintiff was subjected to illegal retaliation for opposing unlawful discrimination in the workplace, and for filing her EEOC charge.

## I. COUNT I – RACE DISCRIMINATION

76. Plaintiff re-alleges and incorporates by reference Paragraphs 1-75 above, to the extent not inconsistent herewith, with the same force and effect as if fully set out in specific detail herein.

77. Defendant willfully and maliciously discriminated against Plaintiff, with reckless disregard for her rights, by failing to provide a workplace free of racial discrimination and discrimination in other terms, conditions, and privileges of her employment on the basis of her race, black. The conduct described herein constituted unlawful discrimination and violates Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

78. As a proximate result of the Defendant's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered severe mental and emotional distress, pain, and suffering, humiliation, loss of enjoyment of life, lost wages and benefits, and will lose wages and benefits in the future.

## II. COUNT II - SEX DISCRIMINATION

79. Plaintiff re-alleges and incorporates by reference Paragraphs 1-75 above, to the extent not inconsistent herewith, with the same force and effect as if fully set out in

specific detail herein.

80. Defendant wilfully and maliciously discriminated against Plaintiff, with reckless disregard for her rights, by failing to provide a workplace free of sexual discrimination in other terms, conditions, and privileges of her employment on the basis of her sex, female. The conduct described herein constituted unlawful discrimination and violates Title VII of the Civil Rights Act of 1964, as amended.

81. As a proximate result of the Defendant's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered severe mental and emotional distress, pain and suffering, humiliation and loss of enjoyment of life, lost wages and benefits, and will lose wages and benefits in the future.

## III. <u>COUNT III - HOSTILE ENVIRONMENT</u>

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 75 above, to the extent not inconsistent herewith, the same force and effect as if fully set out in specific detail herein.

83. Plaintiff was required to work in a hostile environment based on sex and/or race which included subjecting Plaintiff to repeated hostility, intimidation and abuse over a period of time. Specifically, Plaintiff was subjected to negative comments and offensive questions about her childcare arrangements, negative comments and complaints about her were tolerated, solicited and more readily accepted by management, and she was required to do managers' duties without additional compensation, among other objectionable acts. Defendant undertook a continuing effort to prevent and intimidate Plaintiff from applying for promotion, to manufacture an unfair basis to deny her a promotion, and to coerce uncompensated managerial work from Plaintiff, while denying her the corresponding

promotion and pay. Enduring these wrongful acts was a condition of Plaintiff's continued employment.

84. Such unlawful employment practices proximately caused plaintiff to suffer severe mental and emotional distress, pain, and suffering, humiliation, loss of enjoyment of life, lost wages and benefits, and will lose wages and benefits in the future.

## IV. COUNT IV - RETALIATION

85. Plaintiff realleges and incorporates by reference Paragraphs 1-75 above, to the extent not inconsistent herewith, with the same force and effect as if fully set out in specific detail herein.

86. Defendant subjected Plaintiff to unequal treatment regarding the terms, conditions, and privileges of her employment after complaining about Defendant's discriminatory treatment and after filing her EEOC charge. The conduct described herein constituted unlawful retaliation and violates Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. The retaliation was done wilfully and with malicious and reckless disregard for the rights of Plaintiff.

87. As a proximate result of Defendant's wrongful conduct, Plaintiff has been injured and damaged as follows: she has suffered extreme mental and emotional distress, humiliation, pain, and suffering, loss of enjoyment of life, and lost wages and benefits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court assumes jurisdiction of this action and after trial:

88. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of Plaintiff, as secured by Title VII and 42 U.S.C. §1981 .

89. Grant Plaintiff a permanent injunction enjoining the Defendant, their agents, successors, employees, attorneys and those acting in concert with and at the request of Steak Out from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1991 and 42 U.S.C. §1981.

90. Award Plaintiff backpay and frontpay.

91. Award Plaintiff compensatory, punitive and/or nominal damages, attorney's fees, costs and expenses.

92. Grant such other and further relief as the cause of justice requires.

/s/ Kerri Johnson Riley
Kerri Johnson Riley (asb-9641-e67k)
*Attorney for Plaintiff*
120 Holmes Avenue, Suite 403
Huntsville, Alabama 35801
(256) 535-0800
E-mail: kjr@kerrijohnsonriley.net

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY AS TO ALL CLAIMS TRIABLE BY A JURY.**

/s/ Kerri Johnson Riley
Kerri Johnson Riley